UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAS WALKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 10 C 8139 |
| | ) |
| APPEALS COUNCIL, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Plaintiff Ras Walker ("Walker"), pursuant to 42 U.S.C. § 405(g), seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Walker and the Commissioner filed cross-motions for summary judgment. For the reasons set forth below, Walker's motion is denied and the Commissioner's motion is granted.

### BACKGROUND

**I.    Procedural History**

On November 9, 2006, Walker filed a Title XVI application for SSI and a Title II application for a period of disability and DIB. After conducting a hearing, an administrative law judge ("ALJ") denied Walker's applications on January 21, 2010.

On February 11, 2010, Walker appealed the ALJ's decision. In support of his appeal, Walker submitted additional medical evidence of his condition, which was accepted and considered by the Appeals Council. The Appeals Council ultimately denied Walker's request for review on October 25, 2010. Having exhausted his administrative remedies, Walker filed the present action on January 10, 2011.

## II. Medical Evidence

### A. Physical Impairments

From 2006 to 2007, Walker received treatment for uncontrolled diabetes, back pain, and keloids. Diagnostic testing of Walker's spine in 2006 revealed normal findings, and a podiatric examination in January 2007 showed no pain of any joints, good range of motion, and normal neurological findings.

In February 2007, Dr. Mahesh Shah ("Dr. Shah") conducted a consultive examination of Walker. During this visit, Walker reported problems with keloids, diabetes, vision, back pain, asthma, and depression. Dr. Shah found multiple keloids on Walker's body but no evidence of infection. Dr. Shah also observed mild tenderness of Walker's back, but noted that Walker's gait was normal, he had a full range of motion of all joints, and he could bear his own weight, squat, and get on and off the examination table. In March 2007, a state agency reviewing physician determined that Walker could perform work at the medium exertional level.

Dr. Azazuddin Ahmed ("Dr. Ahmed"), Walker's treating physician, diagnosed Walker with osteoarthritis, left knee pain, diabetes, and depression. In treatment notes from November 2007, Dr. Ahmed stated that Walker was unable to return to work due to pain. An x-ray of Walker's left foot in December 2007 confirmed what appeared to be early osteoarthritis.

In several treatment notes from late 2007 through 2008, Dr. Ahmed repeatedly stated that Walker suffered from depression, asthma, and degenerative joint disease in his back and knees. Dr. Ahmed also commented that Walker "needs some help with food stamps and disability determination." Despite Walker's complaints of severe back and knee pain, January and April 2008 treatment notes indicate that Walker did not have any focal neurological deficits, and straight-leg raising tests were negative. In December 2008, Dr. Ahmed drafted a letter stating that Walker had severe osteoarthritis and required a cane for ambulation. Dr. Ahmed concluded that Walker was unable to work for at least one year.

Walker underwent surgery to remove two keloids in April 2009 and post-operative notes indicate that he was recovering well. Walker subsequently reported shoulder pain, though a May 2009 treatment note indicted that an x-ray of his right shoulder was negative.

### B. Mental Impairments

In November 2006, Walker was hospitalized for five days after consuming half a bottle of ibuprofen. Treatment notes indicate that he suffered from suicidal ideation, a history of depression, diabetes, and multiple keloids. Walker had not been taking any medication for his depression at the time and he tested positive for cocaine and marijuana use.

Walker underwent a psychiatric evaluation in January 2007, where he stated that he had not felt suicidal since November 2006, though he was experiencing low motivation and decreased energy. A mental status exam found no psychological symptoms in the areas of appearance, behavior and attitude, mood and affect, perception, and intellectual and cognitive functioning. Walker denied depression and suicidal thoughts at a March 2007 treatment session and stated that his mood had been improving.

Dr. Mahim Vora ("Dr. Vora"), Walker's treating psychiatrist since January 2007, completed a mental impairment questionnaire in March 2007. Dr. Vora's report indicates that Walker suffered from a single episode of major depression and had a Global Assessment of Functioning ("GAF") score of 70. Although Dr. Vora observed that Walker experienced decreased energy, appetite disturbance, mood disturbance, and substance dependance, he noted that Walker felt less depressed when he used his

medication, Wellbutrin. Dr. Vora was "unable to comment" on Walker's mental abilities and aptitude to perform unskilled work. However, Dr. Vora concluded that Walker's depression caused only mild difficulties in "activities of daily living" and "social functioning." He also found that Walker suffered from moderate deficiencies in "concentration, persistence, or pace." Dr. Vora noted that Walker had experienced one to two episodes of decompensation in the past twelve months, referring to his November 2006 hospitalization. Walker's GAF scores ranged from 55 to 70 from May to November, 2007.

For unexplained reasons, Walker received inpatient mental health treatment for nine days in November 2007. Follow-up visits with Dr. Vora indicated that Walker "felt better," denied depression or suicidal ideals, and showed improved sleep and appetite. In early 2008, Walker's GAF scores were consistently 70.

In May 2008, Walker, at his own request, received additional inpatient treatment at a mental health facility. The discharge summary indicates that Walker had been non-compliant with his medication and that his GAF score was 70 at the time of his discharge. Walker continued to receive treatment throughout 2008 and Dr. Vora's treatment notes from June through September 2008 indicate that he denied depression or suicidal thoughts, showed improved mood and sleep patterns, and experienced no side effects from his medication.

Dr. Vora completed a second mental impairment questionnaire in July 2009. In this report, Dr. Vora indicated a GAF score of 70 and noted that Walker experienced feelings of guilt, generalized persistent anxiety, and difficulty sleeping, thinking, and concentrating, though his prognosis was "good." Dr. Vora indicated that Walker suffered from major deficiencies in "social functioning" and "concentration, persistence, or pace." Dr. Vora also concluded that Walker was "unable to meet competitive standards" in many categories of "mental abilities and aptitude" to perform skilled or unskilled work. Approximately one month after his hearing, Walker submitted a note from Dr. Vora indicating that his GAF score was 50.

### III. The Administrative Hearing and the ALJ's Decision

The ALJ heard testimony from Walker, medical expert Dr. Hugh Savage ("Dr. Savage"), and a vocational expert ("VE"). Walker testified that he stopped working as a truck driver because of his impaired vision and diabetes and that he could not return to work due to his diabetes, mental illness, and pain resulting from arthritis in his back, knee and shoulder. Although pain medication helped, his pain was exacerbated by lifting, too much walking, and cold or rain.

Dr. Savage testified that Walker's impairments did not meet listing-level severity. He further opined that Walker could perform work that did not require lifting more than twenty pounds occasionally and ten pounds frequently, and that Walker could stand,

walk, and sit for six hours each with regular breaks.  Dr. Savage recommended that Walker abstain from climbing ladders, ropes, or scaffolds, avoid exposure to unprotected heights and machinery, and refrain from stressful employment, such as time-sensitive work.  The VE testified that a person with Walker's vocational history and the limitations detailed by Dr. Savage could perform many types of sedentary jobs.

The ALJ adopted Dr. Savage's conclusion that Walker's impairments were not of listing-level severity.  In assessing Walker's physical ailments, the ALJ noted an absence of objective medical evidence to support Dr. Ahmed's findings of debilitating knee and back pain.  With regard to Walker's psychological impairments, the ALJ found Dr. Vora's 2009 report unpersuasive and afforded this report "very little weight." Ultimately, the ALJ determined that Walker could perform a significant number of jobs in the regional economy and was therefore not disabled.

Walker filed a complaint with this Court on January 10, 2011, requesting a review of the ALJ's decision.  On July 19, 2011, Walker filed a motion for summary judgment[1] to reverse the Commissioner's decision or to remand his case for further examination.  Walker contends that: (1) the ALJ made a legal error by failing to give controlling weight to his treating physicians' opinions, and (2) the Commissioner failed

---

[1] Although denominated as motions for summary judgment, these motions are actually a review of the administrative record.  *See Schmidt v. Astrue*, 496 F.3d 833 (7th Cir. 2007); *Allen v. Callahan*, No. 97 C 1080, 1997 WL 665752 (N.D. Ill. Oct. 17, 1997) (Kocoras, J.).

to consider new and material evidence that was submitted after his hearing.[2] The Commissioner filed a cross-motion for summary judgment, asking the Court to affirm the denial of Walker's applications.

**LEGAL STANDARD**

A district court reviewing an ALJ's decision must affirm the decision if it is supported by substantial evidence and does not contain legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "such evidence as a reasonable mind might accept to adequately support a conclusion." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). A court will not "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). However, an ALJ is not entitled to unbridled judicial deference. *Clifford*, 227 F.3d at 869. A court will reverse or remand if the ALJ fails to rationally articulate the grounds for her decision or fails to build a logical bridge from the evidence to her conclusions. *Steele*, 290 F.3d at 941.

---

[2] Walker's "motion" is simply a compilation of medical records and treatment notes, devoid of any legal arguments. However, based on information contained in his reply brief and the Request for Review that he submitted to the Appeals Council, we conclude that Walker is challenging these two aspects of the Commissioner's decision.

DISCUSSION

I. **Justiciability of Walker's Claims**

As a threshold issue, we must determine whether Walker's claims are moot. In his reply brief, Walker indicates that he has been awarded SSI since he filed his present motion and is currently seeking back benefits. Therefore, to the extent that Walker's instant motion seeks an award of SSI, his motion is denied as moot.

However, Walker has not stated that he has been granted DIB or back benefits. It is unlikely that Walker was granted DIB because to qualify for these benefits, he must have established his disability on or before December 31, 2008. *See* 42 U.S.C. §§ 416(I), 423. Presumably, Walker's recently approved application for SSI was submitted after this date. Because Walker has not provided any information to the Court suggesting that he has been awarded DIB or back benefits and because the Commissioner does not argue that Walker's claim is moot, we address Walker's requests for back benefits and DIB.

II. **The ALJ's Medical Findings**

Walker contends that the ALJ committed reversible error by failing to give controlling weight to his treating physicians' reports. The ALJ gave "very little weight" to the conclusions of Dr. Ahmed, Walker's primary care physician, and Dr. Vora, Walker's treating psychiatrist.

A treating physician's opinion is generally entitled to controlling weight if it is well-supported by and consistent with medical evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010). Additionally, an ALJ "may discount a treating physician's medical opinion if the opinion 'is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent.'" *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)). An ALJ must provide "good reason" for rejecting a treating physician's professional opinion. *Schaaf*, 602 F.3d at 875 (internal citations omitted); *see Schmidt*, 496 F.3d at 842 (requiring an ALJ to "minimally articulate his reasons for crediting or rejecting evidence of disability").

### A.  Dr. Ahmed's Findings

From 2007 to early 2008, Dr. Ahmed submitted multiple treatment notes stating that Walker suffered from severe knee and back pain, degenerative joint disease, diabetes, major depression, and asthma. Dr. Ahmed concluded that Walker was unable to return to work pending a reevaluation. In December 2008, Dr. Ahmed diagnosed Walker with severe osteoarthritis, noting that Walker needed a cane for ambulation and that Walker was unable to return to work for at least one year. The ALJ, however, declined to afford controlling weight to these conclusions because they were

unsupported by objective evidence. The ALJ further expressed her concern that Dr. Ahmed's medical opinion might be based on a desire to help his patient because Dr. Ahmed wrote that Walker "needs some help with food stamps and disability determination."

As discussed by the ALJ, the record is bereft of any objective medical evidence suggesting that Walker's keloids or pain rendered him disabled prior to late 2007. Diagnostic testing of Walker's spine in 2006 revealed normal findings, and a podiatric examination in January 2007 showed no pain of any joints, good range of motion, and normal neurological findings. Furthermore, Dr. Shah noted in 2007 that Walker's gait was normal, he had a full range of motion in all joints, and he could bear his own weight, squat, and get on and off the examination table.

The earliest objective evidence to support Dr. Ahmed's conclusions arose from an x-ray of Walker's foot in December 2007. Although the x-ray indicated early osteoarthritis, the medical evidence does not suggest that this osteoarthritis became so severe that Walker was unable to work. Medical notes from January and April 2008 indicate that Walker had no focal neurological deficits and negative straight leg raising. Furthermore, a pain clinic assessment in November 2009 indicates that Walker's gait and back movements were within normal limits.

Even if Walker's degenerative disc disease or osteoarthritis significantly worsened, as suggested by Dr. Ahmed's notes, Walker was required to submit objective medical evidence to explain the worsening prognosis. *Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010). However, Walker failed to submit any such evidence. Although Walker submitted MRI results from December 2009 to the Appeals Council, these results reveal only mild degenerative disc disease and do not account for the alleged severity of his symptoms. Additionally, medical notes from 2011 contained in Walker's reply brief indicate that Walker's alleged severe pain at that time was inconsistent with the 2009 MRI results. This further suggests that Walker's MRI in 2009 did not yield any remarkable findings.

Finally, the ALJ was not required to give controlling weight to Dr. Ahmed's conclusion that Walker was unable to work. A finding that a claimant is unable to work is specifically reserved for the Commissioner, and an ALJ need not give controlling weight to such conclusions. 20 C.F.R. §§ 404.1527(e)(1), (3); *Denton,* 596 F.3d at 424.

For these reasons, the ALJ did not commit legal error by refusing to give controlling weight to Dr. Ahmed's reports. Moreover, the ALJ clearly articulated her reasons for rejecting Dr. Ahmed's opinions and cited to objective medical evidence to support her ultimate conclusion. The ALJ's decision with respect to Walker's physical impairments is therefore supported by substantial evidence and will not be disturbed.

## B. Dr. Vora's Findings

In a July 2009 mental impairment questionnaire, Dr. Vora indicated that Walker suffered from marked limitations in the functional categories of "maintaining social functioning" and "concentration, persistence, or pace." Dr. Vora further concluded that Walker lacked the mental abilities and aptitude to perform skilled or unskilled work. In giving "very little weight" to Dr. Vora's conclusions, the ALJ found that Dr. Vora's 2009 report was internally inconsistent, unsupported by objective medical evidence, and inconsistent with her 2007 report.

First, in finding Dr. Vora's 2009 report internally inconsistent, the ALJ noted that Walker's GAF score was incompatible with Dr. Vora's conclusions regarding his capacity for employment. Dr. Vora assigned Walker a GAF score of 70, which suggests "some mild symptoms or some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision* 34 (4th ed. 2000) (hereinafter, "DSM-IV-TR"). Dr. Vora also concluded that Walker's prognosis was "good," which reflects improvement from her 2007 prognosis of "fair." These findings are inconsistent with Dr. Vora's conclusion that Walker's condition had deteriorated such that he maintained

marked difficulties in "maintaining social functioning" and "concentration, persistence, and pace." The GAF score is also inconsistent with Dr. Vora's conclusion that Walker was unable to meet competitive standards for several categories of "mental abilities and aptitudes" necessary for skilled or unskilled employment.

Second, the ALJ further determined that Dr. Vora's 2009 report was unsupported by objective medical evidence. Dr. Vora did not elaborate on his findings in the questionnaire, which required him to explain Walker's limitations and "include medical/clinical findings that support [his] assessment." Dr. Vora failed to include any explanations or clinical findings upon which he based his conclusions. Moreover, the ALJ noted that Dr. Vora failed to explain how or why Walker's psychological condition deteriorated so rapidly between her assessments. If Walker's condition was in fact worsening, "a medical expert is obligated to point to objective medical evidence to explain the worsening prognosis." *Denton,* 596 F.3d at 424. Dr. Vora did not point to any such evidence, and her progress notes preceding her 2009 report indicate improvement rather than decline.

Finally, the ALJ found that Dr. Vora's 2007 and 2009 reports were inconsistent. Dr. Vora's 2007 report indicated that Walker had experienced one to two episodes of decompensation, while the 2009 report revealed that Walker did not suffer from any such episodes. These reports, however, are not incompatible because Dr. Vora was

responding to a question regarding how many times *in the past twelve months* Walker had experienced an episode of decompensation. Because Vora's final report was submitted more than two years after her first report, the reports are not inconsistent. More likely, Walker experienced one or two episodes of decompensation prior to 2007, but had not experienced any in the twelve months preceding Dr. Vora's 2009 report. However, this error is harmless because, as discussed above, the ALJ determined that Dr. Vora's 2009 report was internally inconsistent and unsupported by the medical evidence in the record. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (stating that harmless error exists when "[i]t is predictable with great confidence that the agency will reinstate its decision on remand").

### III. New Evidence

Walker suggests that the ALJ and the Appeals Council failed to consider new evidence submitted after his hearing. A district court may remand a claim and order the Commissioner to consider "new and material" evidence. 42 U.S.C. § 405(g). New evidence is "that which was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Simila v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009) (quoting *Perkins v. Charter*, 107 F.3d 1290, 1296 (7th Cir. 1997)). Such evidence is material "only if there is a reasonable probability that it would have affected the outcome of the ALJ's decision." *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir.

2005). Where the new evidence postdates the decision, the evidence will be material only if it speaks to the claimant's condition at the time the application was under consideration by the Social Security Administration. *Id.*

Walker argues that new and material evidence should have been considered at three different stages of the proceedings. First, Walker contends that the ALJ and the Appeals Council failed to consider a supplemental note from Dr. Vora submitted to the ALJ in August 2009. This note postdates the hearing but was submitted well before the ALJ issued her decision. In this note, Dr. Vora stated that Walker's GAF score was 50, a significant departure from his assessment of 70 one month earlier. A GAF score of 50 represents "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning." DSM-IV-TR at 34. Walker contends that this information is new and material because the ALJ partially relied on the GAF score of 70 in Dr. Vora's 2009 report to conclude that the report was internally inconsistent.

However, this information is not material, as it does not create a reasonable probability that the ALJ would have reached a different conclusion had the information been considered. *See Schmidt v. Barnhart*, 395 F.3d at 742. While the ALJ did not include any reference to this note in her opinion, she did not exclusively rely on Walker's GAF score to discount Dr. Vora's opinions. Rather, the ALJ noted that

"Dr. Vora's opinion is not well supported, not explained, and cannot be reconciled with the remainder of the record evidence." Dr. Vora's note, which merely provides an updated GAF score with no explanation of the underlying causes, suffered from the same defects which led the ALJ to reject Dr. Vora's prior opinion. In the absence of any medical explanation for the score, there is no reasonable probability that the ALJ would have reached a different conclusion had she considered Dr. Vora's note.

Second, Walker submitted MRI results from 2009 to the Appeals Council and asserts that these MRI results show a nerve root impingement that could allegedly account for Walker's neck, shoulder, and arm symptoms. However, the Appeals Council accepted and considered this evidence, and ultimately denied Walker's request for review. Because the Appeals Council considered this evidence, its decision is discretionary and unreviewable by the Court. *See Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008) ("Where the Appeals Council considers the new evidence along with the rest of the record and declines to remand because there is nothing before it that undermines the ALJ's decision, we shall not review the Council's discretionary decision.").

Finally, Walker has submitted evidence to the Court that postdates both the ALJ's decision and the Appeals Council's denial of his request for review. The evidence includes medical notes and diagnostic results from June and August 2011. This

evidence, however, is not material as it does not speak to Walker's condition at the time that his application was under consideration. The ALJ rendered her decision in January 2010 and the evidence submitted is too far removed in time from the date of Walker's decision to be material to his 2006 applications for SSI and DIB. These reports speak only to Walker's current condition, for which he has since been awarded SSI. This evidence thus fails to meet the "materiality" requirement of Section 405(g).

## CONCLUSION

Based on the foregoing, the Court denies Walker's motion for summary judgment and grants the Commissioner's motion for summary judgment.

Charles P. Kocoras
United States District Judge

Dated:   December 15, 2011